Daniel R. Watkins
Nevada State Bar No. 11881
dw@wl-llp.com
Theresa M. Santos
Nevada State Bar No. 9448
tsantos@wl-llp.com
WATKINS & LETOFSKY, LLP
8215 S. Eastern Ave., Suite 265
Las Vegas, NV 89123
Office: (702) 901-7553; Fax: (702) 974-1297
Attorneys for Plaintiff, Kevin Slover

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KEVIN SLOVER,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>VALLEY HEALTH SYSTEM, LLC., and DOES 1-50, inclusive<br><br>　　　　　　　Defendants. | Case No.: 2:20-cv-00568<br><br>**COMPLAINT FOR DAMAGES**<br>**(DEMAND FOR JURY TRIAL**) |

COMES NOW, Plaintiff, Kevin Slover (herein "PLAINTIFF") and files this civil action against Defendants, and each of them, for violations of the American with Disabilities Act, 42 U.S.C. § 12112 et seq., The Family Medical Leave Act, 29 U.S.C. §2601 et seq., as well as violations under Nevada Revised Statutes §613.330 et seq.; and related claims under Nevada law, seeking damages, and alleges as follows:

//
//
//
//
//
//

## JURISDICTION AND VENUE

1. This Court has jurisdiction and venue over this action pursuant to the Americans with Disabilities Act, 42 U.S.C. §12112 et seq., and The Family Medical Leave Act, 29 U.S.C. §2617 et seq; which confers original jurisdiction on federal district courts in suits to address the deprivation of rights, privileges and immunities secured by the United States Constitution and federal law.

2. Jurisdiction of this Court is also appropriate under any related claims under Nevada law.

3. Supplemental Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the State law claims which are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

4. Plaintiff has exhausted his administrative remedies.

5. All conditions precedent to jurisdiction under section 42 U.S.C. §12101 et seq. have occurred or been complied with:

   a. A charge of employment discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practice alleged herein and / or within 300 days of PLAINTIFF instituting proceedings with a State or local agency with authority to grant or seek relief from such unlawful employment practices alleged herein;

   b. A Notice of Right to Sue in Federal Court was received from the EEOC, dated January 31, 2020. (A true and correct copy of said letter is attached and incorporated herein as Exhibit "1".)

6. This complaint is filed within 90 days of receipt of the EEOC's Notification of Right to Sue.

7. Venue is proper in the District of Nevada because the unlawful employment practices alleged herein were committed in whole or in part in the District of Nevada pursuant to 28 U.S.C. § 1391(b).

# PARTIES
## PLAINTIFF

8. PLAINTIFF, KEVIN SLOVER, was a qualified/eligible "employee" of Defendant, VALLEY HEALTH SYSTEM, LLC., within the meaning of Family Medical Leave Act, 29 U.S.C. §2601 *et seq*, the Americans with Disabilities Act, 42 U.S.C. §12111, *et seq.*, and Nevada Revised Statutes §§ 608.010 and 613.010 *et seq.*; and related claims under Nevada law.

## DEFENDANTS

9. Defendant, VALLEY HEALTH SYSTEM, LLC. is a foreign limited liability company qualified to do business in Nevada. Defendant employs 50 or more employees and is an "employer" within the meaning of Family Medical Leave Act, 29 U.S.C. §2601 *et seq.*, the Americans with Disabilities Act of 1990, 42 U.S.C. §12111 *et. seq.*, and Nevada Revised Statutes §§ 608.010 and 613.010 *et seq.*; and related claims under Nevada law. Defendant has offices located at 5400 S. Rainbow Blvd., Las Vegas, NV 89118.

10. The true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1 through 50, inclusive are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. PLAINTIFF is informed and believes and thereon alleges that each of the fictitiously named DEFENDANTS are in some way responsible for, or participated in, or contributed to, the matters and things complained of herein, and is legally responsible in some manner. PLAINTIFF will seek leave to amend this Complaint when the true names, capacities, participation and responsibilities have been ascertained.

## STATEMENT OF FACTS

11. PLAINTIFF, KEVIN SLOVER, is a 49-year-old male with a date of birth of July 10, 1970. MR. SLOVER is a former employee of Defendant where he worked as an Endoscopy, Cath lab and Intervention Radiology Supervisor at Henderson Hospital. At the time of his employment, MR. SLOVER earned $200,000.00 annually. He was employed by Defendant from August 2008 to June 6, 2019.

12. MR. SLOVER began working for DEFENDANTS in October 1994. He left several times to pursue other opportunities, but always returned to Defendant's employ. He returned for the final time on August 25, 2008 and worked continuously until June 6, 2019. Throughout the years, MR. SLOVER advanced within the VALLEY HEALTH SYSTEM to become a Supervisor.

13. On or about January 8, 2019, Chief Nursing Officer Tina Coker and O.R. Director Rachel Ann Lemahieu, offered MR. SLOVER a promotion to manager for the Cath Lab, Intervention Radiology, Endoscopy and PICC line program.

14. On or about the morning of January 16, 2019, MR. SLOVER informed Ms. Lemahieu that he was reluctant to take the promotion because he was anticipating taking FMLA leave to address stress and anxiety issues related to his bipolar disorder.

15. Ms. Lemahieu became angry and informed MR. SLOVER that taking leave would have severe consequences.

16. Late in the afternoon on January 16, 2019, MR. SLOVER met with Ms. Lemahieu and another Supervisor, Cathleen Snyder, in Ms. Lemahieu's office. There, Ms. Lemahieu informed MR. SLOVER and Ms. Snyder that there were multiple reports from different departments that MR. SLOVER and Ms. Synder had been fighting.

17. Both Mr. Slover and Ms. Snyder denied the accusation that they had been fighting. When MR. SLOVER asked Ms. Lemahieu for examples, Ms. Lemahieu was unable to provide any specific instances of arguments or misconduct.

18. On or about January 17, 2019, Ms. Lemahieu rescinded the subject offer and informed MR. SLOVER that she was rescinding it because of multiple written complaints from staff about his behavior. Ms. Lemahieu did not show MR. SLOVER any of the complaints, nor would she elaborate on the basis for any of the complaints.

19. On or about January 22, 2019, Operating Room manager Lisa Salerno informed MR. SLOVER that Ms. Lemahieu had a Cath Lab nursing candidate interview scheduled without him. MR. SLOVER and Ms. Lemahieu had always interviewed all nursing candidates for the Cath Lab, Intervention Radiology, Endoscopy and PICC line

program together because MR. SLOVER was their direct supervisor. When MR. SLOVER discussed his exclusion from the interview with Ms. Lemahieu, she replied, "I don't need you!"

20. On or about January 28, 2019, Defendant's Human Resources Department called MR. SLOVER in for an investigation. Mihaiela "Michelle" Norton, (hereinafter "Michelle Norton") the HR representative, accused MR. SLOVER of gossiping about upper management. She then showed him text messages that allegedly were sent between him and supervisor Cathleen Snyder. When MR. SLOVER had an opportunity to review the messages, he immediately was able to tell that they were adulterated messages from a conversation he had with Ms. Snyder.

21. Later in the afternoon of January 28, 2019, Ms. Snyder informed MR. SLOVER that Ms. Lemahieu had ordered her to print off any text messages between herself and MR. SLOVER that could be viewed negatively toward MR. SLOVER.

22. Ms. Snyder also informed MR. SLOVER that Rachel instructed her to provide a statement about tracers to reflect that they were not completed correctly and had been falsified. Ms. Snyder informed MR. SLOVER that she was unfamiliar with tracers, but provided the requested statements to Ms. Lemahieu because she feared for her employment. She further informed MR. SLOVER, "They were all staring at me. . .I was scared and confused!". Furthermore, Ms. Snyder informed MR. SLOVER that Ms. Lemahieu had instructed her and employee Sara Blood, to record all conversations between themselves and Mr. SLOVER.

23. On or about February 1, 2019, Ms. Lemahieu called MR. SLOVER into a meeting with HR Director Michael Ramey and presented him with a level II discipline for gossiping and having a negative demeanor towards staff. MR. SLOVER initially declined to sign the discipline. Mr. Ramey informed MR. SLOVER that his employment was contingent upon endorsing the write-up/action plan.

24. On or about February 3, 2019, MR. SLOVER returned to Mr. Ramey via email a signed level II action plan along with a written rebuttal to the accusations.

25. On or about February 4, 2019, MR. SLOVER met with his physician, who completed the authorization paperwork for two weeks of continuous FMLA. MR. SLOVER'S FMLA was retroactive to February 2, 2019.

26. On or about February 4, 2019, MR. SLOVER received multiple text messages from the Chief Nursing Officer (hereinafter "CNO") as well as a telephone call from her, requesting that he attend a meeting with her at the Nevada State Board of Nursing the following day, February 5, 2019.

27. On or about February 8, 2019, HR notified MR. SLOVER by email requesting instructions on what to do with his prescription medication that had been found in his office desk drawer.

28. MR. SLOVER'S office was always locked and only accessible through a key code.  MR. SLOVER, the clinical supervisors and cath lab staff were the only individuals who had the access code to enter his office.

29. On or about February 12, 2019, several of MR. SLOVER'S colleagues notified him that all of his belongings had been removed from his office

30. On or about February 28, 2019, the Human Resources (hereinafter "HR") department sent MR. SLOVER an email, asking him to complete the Driving Nursing Attributes test to be considered for a staff registered nurse (hereinafter "RN") position. The Driving Nursing Attributes test is a pre-employment test given for new hires.

31. On March 20, 2019, MR. SLOVER presented to the employee health nurse to provide his FMLA release paperwork.  The health nurse gave MR. SLOVER a note from HR directing him to report directly to HR for a meeting on March 22, 2019 at 8:30 a.m.

32. On March 22, 2019, MR. SLOVER drove to Henderson Hospital for the meeting with HR. Upon his arrival, he was informed that the meeting was rescheduled to a "date to be determined."

//
//
//

33. On or about April 9, 2019, MR. SLOVER attended a meeting with HR Director Michael Ramey, Human Resources Generalist Michelle Norton, Operating Room Director Rachel Lemahieu, and Operating Room Manager Lisa Salerno, wherein they informed him his employment was terminated.

34. On or about April 11, 2019, MR. SLOVER appealed his termination through the employee appeals process.

35. On or about April 12, 2019, Mr. Ramey emailed MR. SLOVER, indicating that there was a misunderstanding and that he had not been terminated.

36. On or about April 14, 2019, MR. SLOVER emailed Mr. Ramey with all the documentation which led him to believe that he had been terminated.

37. On or about April 16, 2019, Mr. Ramey informed MR. SLOVER that he was on paid suspension.

38. MR. SLOVER remained on paid suspension until June 6, 2019, when he attended a meeting with Ms. Nortan and Ms. Lemahieu, wherein they informed him that his employment was terminated.

39. A clear nexus exists between MR. SLOVER receiving his FMLA medical leave and DEFENDANT terminating MR. SLOVER'S employment in retaliation.

40. The despicable tactics of DEFENDANT caused a substantial burden to MR. SLOVER'S rights and caused PLAINTIFF to suffer significant emotional distress, embarrassment, and humiliation, in addition to financial loss.

### COUNT I
### INTERFERENCE, DISCRIMINATION AND RETALIATION WITH FAMILY MEDICAL LEAVE
**Family Medical Leave Act (29 U.S.C. §2601 et seq.)**
**(Against All Defendants)**

41. PLAINTIFF, KEVIN SLOVER, hereby incorporates paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42. MR. SLOVER'S bipolar disorder constitutes a "serious health condition," defined by the statute as an illness, injury, impairment or physical or mental condition that involves

either 1) inpatient care in a hospital or other care facility, or 2) continuing treatment by a health care provider.

43. MR. SLOVER gave appropriate notice of his need to be absent from work. "Appropriate notice" was given where, if MR. SLOVER could foresee the need for leave, he notified DEFENDANT at least 30 days before the leave was to begin and if MR. SLOVER could not foresee the need for leave, MR. SLOVER notified DEFENDANT as soon as practicable after he learned of the need for leave.

44. MR. SLOVER was required to timely notify DEFENDANT of the need for leave, but MR. SLOVER was not required to specify that the leave was sought under the FMLA, nor was MR. SLOVER required to mention that Act in the notice. Additionally, MR. SLOVER was not required to provide the exact dates or duration of the leave requested. Moreover, MR. SLOVER was not required to give DEFENDANT a formal written request for anticipated leave. Simple verbal notice was provided and sufficient when a written request was not available.

45. DEFENDANT interfered with MR. SLOVER's exercise of his right to take unpaid intermittent and consecutive leave from work as authorized by the Family Medical Leave Act (29 U.S.C. §2601 et seq.) by, but not limited to, commenting that her leave was "affecting the productivity of the team," assigning her tasks that she could not reasonably complete during her shifts and obstructing her ability to complete mandatory training. These comments and actions prejudiced MR. SLOVER in her utilization of her FMLA benefits.

46. DEFENDANTS' unlawful discrimination against MR. SLOVER consisted of treating MR. SLOVER differently based on his use of leave authorized by the FMLA related to employment, including recruitment, hiring, assignments, discipline, promotion, and benefits as set forth herein.

47. DEFENDANT discriminated against MR. SLOVER for his exercise of his right to take unpaid leave from work as authorized by the Family Medical Leave Act (29 U.S.C. §2601 et seq.) by, by not limited to, commenting that if he took leave he would regret it, calling him during his leave and asking him to attend meetings and sending him benefits

information only applicable to new employees. These comments and actions prejudiced MR. SLOVER in his utilization of his FMLA benefits.

48. DEFENDANT retaliated against MR. SLOVER'S right to take unpaid intermittent and consecutive leave from work in violation of the Family Medical Leave Act (29 U.S.C. §2601 et seq.) by, but not limited to, commenting that if he took leave he would regret it, calling him during his leave and asking him to attend meetings and sending him benefits information only applicable to new employees. These comments and actions prejudiced MR. SLOVER in his utilization of his FMLA benefits.

49. DEFENDANT retaliated against MR. SLOVER'S right to take unpaid intermittent and consecutive leave from work in violation of the Family Medical Leave Act (29 U.S.C. §2601 et seq.) by terminating her employment for his use of FMLA leave.

50. MR. SLOVER claims that exercise of his right to take unpaid leave from work as authorized by the FMLA was either the sole reason or a motivating factor for DEFENDANT'S decision to terminate his employment.

51. As a proximate result of DEFENDANT'S discriminatory actions, MR. SLOVER has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress. As a result of those actions and consequent harms, MR. SLOVER has suffered such damages in an amount to be proven at trial.

52. DEFENDANT intentionally, voluntarily, deliberately, and willfully discharged MR. SLOVER.

53. DEFENDANT'S unlawful actions were intentional, willful, malicious and/or done with reckless disregard for MR. SLOVER'S federally protected rights.

54. DEFENDANT, through its agents or supervisors failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of DEFENDANTS as described above thereby ratifying the unlawful conduct of its agents or supervisors.

55. MR. SLOVER requests relief as described in the Prayer for Relief below.

//

## COUNT II
## INTERFERENCE AND DISCRIMINATION WITH AMERICANS WITH DISABILITIES ACT
Americans with Disabilities Act (42 U.S.C. §12101 et seq.)
NV Rev. Stat. §613.330 *et seq.*
**(Against All Defendants)**

56. MR. SLOVER hereby incorporates paragraphs 1 through 55 of this Complaint as though fully set forth herein.

57. At all times material hereto, MR. SLOVER was an employee covered by and within the meaning of Title I of the Americans with Disabilities Act of 1990 (ADA) 42 USC 12111(4)).

58. At all times material hereto, MR. SLOVER was and is an individual with a disability within the meaning of §3(2) of the ADA, 42 USC 12102(2).

59. MR. SLOVER is a qualified individual with a disability as that term is defined in the ADA, 42 USC 12111(8).

60. MR. SLOVER'S bipolar disorder is a physical impairment that substantially limited one or more major life activities.

61. DEFENDANT was aware of MR. SLOVER'S bipolar disorder.

62. DEFENDANT'S discrimination of MR. SLOVER began immediately after DEFENDANT learned of his disability.

63. MR. SLOVER'S disability, and/or record of a disability, and/or perceived disability was a factor that made a difference in DEFENDANT'S decision to terminate him.

64. The actions of DEFENDANT were intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of MR. SLOVER.

65. As a direct and proximate result of DEFENDANT'S violation of MR. SLOVER'S rights as alleged, MR. SLOVER'S terms, conditions, and privileges of employment were adversely affected.

66. As a direct and proximate result of DEFENDANT'S wrongful acts and omissions, MR. SLOVER has sustained injuries and damages including but not limited to, loss of

earnings and earning capacity; loss of career opportunities; loss of fringe benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

67.     MR. SLOVER requests relief as described in the Prayer for Relief below.

## COUNT III
### DISABILITY DISCRIMINATION – RETALIATION
**Americans with Disabilities Act (42 U.S.C. §12101 et seq.)**
**NV Rev. Stat. §613.330** *et seq.*

68.     MR. SLOVER hereby incorporates paragraphs 1 through 67 of this Complaint as though fully set forth herein.

69.     MR. SLOVER engaged in an activity protected under federal and state laws, including requesting an accommodation for a disability.  In return, DEFENDANT retaliated against MR. SLOVER by manufacturing disciplinary measures in order to discharge him from employment.

70.      MR. SLOVER'S disability was a motivating factor for DEFENDANT'S decision to terminate his employment.

71.     MR. SLOVER was subjected to the adverse employment action described herein because he requested a reasonable accommodation.  DEFENDANT reacted by depriving him of his rights and benefits under the Americans with Disabilities Act (42 U.S.C. §12101 et seq.) by terminating him.

72.      MR. SLOVER was subjected to the adverse employment action described herein because of his participation in the protected activity and the adverse employment action would not have occurred but for that participation.

73.     As a direct and proximate result of DEFENDANT'S willful, knowing, and intentional discrimination and retaliation against MR. SLOVER, MR. SLOVER has suffered and will continue to suffer pain, humiliation and emotional distress.

//

//

COMPLAINT FOR DAMAGES
-11-

74. MR. SLOVER has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. MR. SLOVER is thereby entitled to general and compensatory damages in amounts to be proven at trial.

75. DEFENDANT intentionally, voluntarily, deliberately, and willfully discriminated against MR. SLOVER by depriving of or interfering with MR. SLOVER'S rights and benefits under the American with Disabilities Act (42 U.S.C. §12101 et. seq.).

76. DEFENDANT'S unlawful actions were intentional, willful, malicious and/or done with reckless disregard for MR. SLOVER'S federally protected rights.

77. MR. SLOVER requests relief as described in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF, KEVIN SLOVER prays that this Court grant the following relief:

1. Grant economic loss including front and back pay, plus interest.
2. Grant general and special damages in amounts according to proof.
3. Grant liquidated damages in amounts according to proof.
4. Grant punitive damages.
5. Reasonable attorneys' fees pursuant to statute
6. Grant costs of suit incurred herein; and
7. Grant such other and further relief as the court deems just and proper.

DATED this 23rd day of March, 2020.

WATKINS & LETOFSKY, LLP

   /s/  Daniel R. Watkins
By:_____
DANIEL R. WATKINS
THERESA M. SANTOS
8215 S. Eastern Ave., Ste. 265
Las Vegas, NV 89123
Attorneys for Plaintiff, Kevin Slover

**REQUEST FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38(b) and 42 U.S.C. §1981a, PLAINTIFF demands a trial by jury in this action on all issues so triable.

DATED this 23rd day of 2020.    WATKINS & LETOFSKY, LLP

By: /s/ Daniel R. Watkins
DANIEL R. WATKINS
THERESA M. SANTOS
8215 S. Eastern Ave., Ste. 265
Las Vegas, NV 89123
Attorneys for Plaintiff, Kevin Slover

# **EXHIBIT 1**

Notice of Right to Sue

EEOC Form 161-B (11/16)            **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Kevin Slover | From: | Los Angeles District Office<br>255 E. Temple St. 4th Floor<br>Los Angeles, CA 90012 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 34B-2019-01346 | Karrie L. Maeda,<br>State & Local Coordinator | (213) 894-1100 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

Rosa M. Viramontes,
**District Director**

January 31, 2020
*(Date Mailed)*

Enclosures(s)

cc:  Jessica Hill, Esq.
**Employment Counsel**
**UNIVERSAL HEALTH SERVICES, INC.**
1000 Health Park Dr., Bldg. 3, Ste. 400
Brentwood, TN 37027